UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VOICE OF THE EXPERIENCED | * | CIVIL ACTION NO. 23-CV-5067 |
| | * | SECTION I |
| | * | |
| VERSUS | * | JUDGE: Lance Africk |
| | * | |
| THE HONORABLE MAYOR | * | MAG: Michael North |
| LATOYA CANTRELL, IN HER | * | |
| OFFICIAL CAPACITY | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO REMAND

NOW INTO COURT, comes the Mayor LaToya Cantrell ("Mayor Cantrell"), who respectfully submits this memorandum in opposition to Plaintiff's motion to remand this action to the Civil District Court for the Parish of Orleans. Removal of this action to federal court is proper pursuant to three separate statutory provisions: 28 U.S.C. § 1441(a), 28 U.S.C. § 1442, and 28 U.S.C. § 1443(2). Further, issues raised by Plaintiff are inextricably intertwined with this Court's clear mandates in *Jones v. Gusman*, Case No. 12-859 (E.D. La. April 2, 2012 ("Consent Decree").

## BACKGROUND

On Friday, September 1, 2023, Plaintiff, Voice of the Experienced ("Plaintiff"), filed a *Motion for Entry of Temporary Restraining Order And Preliminary Mandatory Injunction* (the "Petition") in the Civil District Court for the Parish of Orleans, State of Louisiana. This action bears the caption "*Voice of the Experienced v. the Honorable Mayor Latoya Cantrell, in Her Official Capacity*," and was assigned Case Number 2023-010324. As this matter is inextricably intertwined with the ongoing litigation in *Jones v. Gusman,* Case No. 12-859 (E.D. La. April 2, 2012 ("Consent Decree"), the defendant, Mayor Cantrell filed to have this matter removed to

federal court. In response, Plaintiff filed a motion to have the matter remanded back to state court.[1] Mayor Cantrell opposes the remand.

As the Court is quite aware, the City is a party to the ongoing lawsuit regarding the expansion of the Orleans Parish Justice Center ("OJC"). Pursuant to the litigation, the Court has ordered the City to complete the Phase III expansion of the OJC. This Court has made it abundantly clear that "the Court intends a zero-tolerance policy from this date forward regarding any unjustified, unreasonable, or unnecessary delays in the completion of this long-planned project. The Court will not tolerate any further 'delays' in this process based on alleged bureaucratic entanglements or processes that are entirely within the City's Control."[2] On August 17, 2023, pursuant to this Court's order, the City reallocated $32 million from its capital budget "to complete Phase III."[3] Plaintiff attempts to circumvent the rulings in *Jones v. Gusman*, USDC Docket No. 12-CV-859, and collaterally attack the Court's express mandate for the City to fund the construction of Phase III without delay. Such attempts are antithetical to the Court's orders and an unnecessary obstacle to the completion of the project.

## LAW AND ARGUMENT

**I. Removal is Proper Pursuant to 28 U.S.C. § 1441.**

Removal is proper under 28 U.S.C. § 1441 because the existence of a substantial federal question provides this Court with original subject matter jurisdiction. When evaluating removal jurisdiction under Section 1441, the initial inquiry is whether "the claim could have been brought in federal court." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 3232, 92 L. Ed. 2d 650 (1986).

---

[1] Rec. Doc. 4.
[2] *See Jones,* No. 12-859, ECF. 1403, p. 2.
[3] *See Jones*, No. 12-859, ECF. 1643.

Plaintiff's claims fall squarely within the "embedded federal question" doctrine. Pursuant to this longstanding doctrine, the Supreme Court has recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."[4] In the Fifth Circuit, "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."[5] Plaintiff's claims meet all of these elements.

Plaintiff's claims arise under federal law because they necessarily require resolution of a purported conflict between the local ordinances and the clear mandate of this Court. On August 17, 2023, the City reallocated $32 million from its capital budget "to complete Phase III."[6] Plaintiff claims that the City's reallocation funds violated the City's Home Rule Charter which outlines the process the City must follow when developing its annual capital projects budget.[7] Specifically, the Home Rule Charter mandates that the City Council approve the Capital Budget via ordinance, and then only after public notice and hearing.[8] However, the City reallocated this funding without seeking an amendment to the Capital Budget Ordinance or holding a public hearing in violation of the Home Rule Charter and Plaintiff's rights.[9]

Though couched as a mere question of adherence to a local ordinance, Plaintiff's claims truly act as a challenge to the Consent Decree and this Court's orders. The Court has jurisdiction to enforce, interpret, and modify the Consent Decree that it approved. *See Frew ex rel. Frew v.*

---

[4] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).
[5] *Hughes v. Chevron Phillips Chem. Co. LP*, 478 F. App'x 167, 170 (5th Cir. 2012) (quoting *Singh v. Duane Morris, LLP,* 538 F.3d 334, 338 (5th Cir. 2008)).
[6] See *Jones*, No. 12-859, ECF. 1643.
[7] See Rec. Doc. 4-1
[8] *Id.*
[9] *Id.*

*Hawkins*, 540 U.S. 431, 440, 124 S. Ct. 899, 905, 157 L. Ed. 2d 855 (2004) ("Once entered, a consent decree may be enforced"). Likewise, the OCurt has the jurisdiction and authority to ensure compliance with its orders. The City contends that this Court's orders are clear. The construction of Phase III because it is necessary to correct violations of federal rights … and no other remedy would correct [the] violation."[10] The Court has made it abundantly clear that its "patience has run out" regarding last ditch efforts to delay the construction of Phase III,[11] and that it will not tolerate any further delay.[12] As the Court has noted, the issues herein are "constitutional violations that have resulted in needless death and injuries."[13] As the Court held that additional delay is intolerable, the City has allocated $31 million dollars towards the construction of Phase III in compliance with the Court's order.

Given this, the Plaintiff's complaint directly involves a federal cause of action, d the Consent Decree. The Fifth Circuit has held that "there are instances where a claim may "arise under" federal law and be removed to federal court, even though the plaintiff makes no federal claims."[14] In *Hughes v. Chevron Phillips*, the Fifth Circuit specified that such instances include those where the plaintiff's "'right to relief under state law [must require] resolution of a substantial question of federal law in dispute between the parties.'"[15] By filing an action to enjoin the City from complying with this Court's order, Plaintiff has raised a substantial federal question that is subject to this Court's original jurisdiction.

---

[10] Rec. Doc. 1648, p. 20.
[11] *See* Rec. Doc. 1634, p. 27. (adopted by this Court in Rec. Doc. 1648)
[12] Rec. Doc 1648, p. 21.
[13] *Id.* at 20.
[14] *Hughes v. Chevron Phillips Chem. Co. LP*, 478 F. App'x 167, 170 (5th Cir. 2012).
[15] *Id.* (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983).

As this Court is the principal and proper arbiter of the Consent Decree with the "responsibility to interpret the decree and oversee the litigation,' there is a substantial federal interest in an action that could undermine it."[16]  The resolution of a potential conflict between federal and state law is unquestionably a substantial issue.

Finally, should the Court entertain jurisdiction based on the embedded federal question doctrine, it can resolve Plaintiffs' claims without upsetting the balance of state and federal judicial responsibilities.  In fact, as the Fifth Circuit has recognized, "[c]ourts possess the inherent authority to enforce their own injunctive decrees."[17]   Here, the Court certainly possesses the authority to enforce its order directing the City to fund the construction of Phase III.

With regard to removal jurisdiction, this case is analogous to *Los Angeles Police Protective League v. City of Los Angeles*,[18]   There, a police union filed suit in state court to enjoin implementation of a provision of the consent decree governing the Los Angeles Police Department, asserting that the provision violated various rights under the California constitution. *Id*.  Both the California Central District Court and the Ninth Circuit held that the matter was properly removed.  As the district court explained:

> the lawsuit implicates substantial questions of federal law regarding the interpretation of 42 U.S.C. § 14141, the proper scope of injunctions issued under that statute, and, the enforceability of the federal judgment, entered pursuant to that statute, whose objective is the protection of the civil rights of those living, working and traveling through areas under the jurisdiction of the LAPD. These are matters that justify resort to a federal forum.[19]

---

[16] *Los Angeles Police Protective League v. City of Los Angeles*, 314 F. App'x 72, 74 (9th Cir. 2009) (quoting *Nehmer v. U.S. Dep't of Veterans Affairs,* 494 F.3d 846, 860 (9th Cir. 2007)) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315, 125 S. Ct. 2363, 2368, 162 L. Ed. 2d 257 (2005)).
[17] *Waffenschmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir. 1985).
[18] 314 F. App'x 72 (9th Cir. 2009).  *See also Los Angeles Police Protective League v. City of Los Angeles*, No. CV0800784GAFRCX, 2008 WL 11454760, at *2 (C.D. Cal. June 20, 2008), *aff'd,* 314 F. App'x 72 (9th Cir. 2009).
[19] *Id.*

The same reasoning applies in this case, where Plaintiffs' suit challenges the implementation of this Court's orders regarding the construction of Phase III. Accordingly, removal is appropriate based on federal question jurisdiction.

## II. <u>Removal is Proper Pursuant to 28 U.S.C. § 1442(a)</u>

This action was also properly removed pursuant to 28 U.S.C. § 1442(a). The right of removal under 28 U.S.C. §1442(a), commonly known as the "federal officer removal statute," permits a defendant to remove an action filed in state court where the action is directed to any person acting under the color of federal authority. 28 U.S.C. §1442(a)(1); *see also Najolia v. Northrup Grumman Ship Systems, Inc.*, 883 F.Supp.2d 646, 651 (E.D. La. 2012). Removal under this statute is an absolute right and should be interpreted broadly. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397-98 (5th Cir. 1998). Indeed, the Supreme Court has stated that this removal provision is premised on a policy of protection in the federal forum for those acting at the direction of the United States and, as a result, has warned that such protection should not be "frustrated by a narrow, grudging interpretation" of the statute. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (quoting *Willingham*). Particularly pertinent to this case, the Fifth Circuit has noted that the statute's chief purpose is to "prevent federal officers who simply comply with a federal duty from being punished by a state court for doing so." *State of La. v. Sparks*, 978 F.2d 226, 232 (5th Cir. 1992).

"[T]o remove under section 1442(a), a defendant must show (1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). It is axiomatic that the City, as a municipality incorporated under the laws of the

state of Louisiana, is a person for purposes of the statute. *See, e.g. Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 671 (E.D. La. 2007) (corporate entities were persons for purposes of the statute). The remaining three elements of § 1442(a) removal jurisdiction are also satisfied, as set forth below.

    **a. The City acted pursuant to the Court's order.**

The "acting under" requirement has been generally construed to mean that the removing defendant performed acts pursuant to a federal officer or agency's "direct orders or comprehensive and detailed regulations." *In re Nat'l Security Agency Telecommunications Records Litig.*, 483 F.Supp.2d 934, 943 (N.D. Cal. 2007). In *Najolia*, this Court determined that the defendant manufacturers of asbestos-containing marine turbines placed aboard Navy vessels acted under federal authority because the Navy was "intimately involved" in the design and manufacture of the product. *Najolia*, 883 F.Supp.2d at 653. The Court further based its decision on evidence that the Navy, as a federal authority, "imposed specific obligations" on the manufacturers in designing the turbines at issue. *Id.*; *see also Dupre v. Todd Shipyards Corp.*, 2011 WL 4551439 at *15 (E.D. La. Sept. 29, 2011) (denying motion to remand in part because removing defendant acted under auspices of the Navy to provide parts for ships). The Court deemed the Navy's level of involvement sufficient proof that the removing manufacturer defendants met the "acting under" requirement for purposes of removal under 28 U.S.C. §1442(a).

Likewise, the City has "acted under" the express direction of this Court to allocate funds for the construction of Phase III. Plaintiff is attempting to delay the implementation of this Court's order and impede the construction of Phase III of the OJC. Again, the Court has stated that its "patience has run out insofar as these last-ditch, half-baked efforts to delay this project are

concerned."[20] On this point, Magistrate Judge North was particularly direct and eloquent in his report and recommendations that were accepted by this Court:

> The Court understands that, for some, the Phase III project is bad politics and bad policy. We respect and understand that view and we always have. Indeed, we share the concerns of many vocal advocates that our community sorely lacks resources for those in need of mental-health treatment who are not incarcerated. But we are charged, in this case, not only with implementation of the consent judgment, but with avoiding and preventing, to the extent that we can, one more moment of unnecessary suffering, one moment of preventable crisis, one more suicide in our jail . . .
>
> The Court can't wait any longer for officials responsible for the constitutional care of these inmates to see that as the issue in this case rather than money, blame, or politics…
>
> The same goes for any funding delays. Particularly given that a majority of the City Council has clearly indicated that it recognizes "***the supremacy of the United States Constitution over City laws.***"[21]

Given the directives of the Court, no action of the City Council was necessary. The Court issued its order and, in doing so, cut through the bureaucratic processes. The City has responded. The funds have been allocated towards the construction of Phase III. Ground will be broken, and the facility will be constructed. In complying with the order, the City has abided by the Court's mandate to prevent "one more moment of unnecessary suffering" and to ensure that the constitutional rights of the inmates are protected. The City understood the Court's order and has acted accordingly. The City did so in compliance with the mandates of the Consent Decree and this Court. Accordingly, the City has satisfied the first prong of the removal test by "acting under" a federal officer.

**b. The City has set forth a "colorable" federal defense.**

---

[20] Rec. Doc. 1634, p. 27. (Approved by Rec. Doc. 1648).
[21] Id. at 27, 28, 29.

The City has also set forth a "colorable" federal defense, namely that the relief sought by Plaintiffs will unnecessarily delay the construction of Phase III and cause the City this Court's orders. The Supreme Court has found that the removing defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407. Rather, the federal defense presented must simply be plausible. *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001). This can be demonstrated as a conflict between federal policy and state law. *Najolia*, 883 F.Supp.2d at 657. Examples of federal defenses that have passed this threshold standard include the federal immunity defense (as in *Winters*, 149 F.3d at 400), the government contractor defense (as in *Najolia*, 883 F.Supp.2d at 657), and the requirements of the Freedom of Information Act (as in *Todd*, 245 F.3d at 693).

As in *Najolia*, there exists a conflict between federal policy and Plaintiffs' interpretation of state law. Though clear to the City, Plaintiff appears to misunderstand the urgency and directness of the Court's order. The City did not and acted accordingly. The resolution of this potential conflict in favor of this Court's orders certainly meets the requisite standard. Thus, this prong is satisfied.

**c. A causal nexus exists between the City's actions and the DOJ's federal authority.**

To meet the final prong of the test, the removing defendant need only show that plaintiffs' claims concern conduct that is "connected or associated with an act pursuant to a federal officer's directions." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). The causal nexus here is self-evident. The City allocated funds pursuant to this Court's order and its failure to do so would have had immediate and harsh consequences. Plaintiffs seek to declare that the City acted unlawfully in complying with the Court's order and to enjoin the City from complying. As

this Court has stated, "if the analysis [of this] prong seems terse, it is logically so." *Najolia*, 883 F.Supp.2d at 659.

Because the City acted (1) pursuant to this Court's clear order; (2) has presented a colorable federal defense as to the appropriateness of its actions; and (3) has shown a causal nexus between its acts and Plaintiffs' claims, removal is appropriate under 28 U.S.C. §1442(a).

### III. Removal is Proper Pursuant to 28 U.S.C. § 1443(2).

Last, 28 U.S.C. § 1443(2) also provides the Court with removal jurisdiction over this action. Section 1443(2) provides for removal jurisdiction over any action "[f]or any act under color of authority derived from any law providing for equal rights." Here, the Court has acted to "correct the violations of plaintiffs' federal rights, and that no other relief would correct that violation."[22] As this Court has held, "failure to provide the meaningful remedy in this case would be and an injustice to those individuals in the Orleans Parish jail who are severely mentally ill or in need of care."[23]

As set forth extensively above, the issues contained in Plaintiff's suit are inherently related to the federal Consent Decree and this Court's orders. As such, *Jones* is an equal civil rights case for purposes of removal.

### CONCLUSION

This action was properly removed to federal court. This Court has original federal question jurisdiction over Plaintiffs' suit to enjoin the City from complying with the Consent Decree and this Court's orders. This Court also has removal jurisdiction under 28 U.S.C. §§ 1442(a) and 1443(2) because the challenged actions were performed under the authority of federal officers and

---

[22] Rec. Doc 1648, p. 20.
[23] *Id.*

under the color and authority of equal rights laws. For all of the reasons set forth in this opposition, Plaintiffs' motion to remand should be denied.

**WHEREFORE**, the City respectfully requests that the Motion for Remand be denied.

Respectfully submitted,

/s *Mark D. Macnamara*
**MARK DANIEL MACNAMARA, LSB #24532**
ASSISTANT CITY ATTORNEY
DMACNAMARA@NOLA.GOV
**RENEE GOUDEAU, LSB #33157**
DEPUTY CITY ATTORNEY
REGOUDEAU@NOLA.GOV
**CORWIN ST. RAYMOND, LSB # 31330**
CHIEF DEPUTY CITY ATTORNEY
CMSTRAYMOND@NOLA.GOV
**DONESIA TURNER, LSB # 23338**
CITY ATTORNEY
DONESIA.TURNER@NOLA.GOV
1300 PERDIDO STREET
CITY HALL - ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE: (504) 658-9800
FACSIMILE: (504) 658-9868

*Attorneys for Mayor Latoya Cantrell, in her official capacity*