UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VOICE OF THE EXPERIENCED** | **CIVIL ACTION** |
| **VERSUS** | **No. 23-5067** |
| **LATOYA CANTRELL** | **SECTION I** |

### ORDER & REASONS

Before the Court is a motion[1] to remand the above-captioned matter to Orleans Parish Civil District Court filed by plaintiff Voice of the Experienced ("VOTE"). Defendant, Mayor LaToya Cantrell in her official capacity ("Mayor Cantrell"), opposes the motion.[2] On October 2, 2023, the Court issued an order and reasons deferring ruling on the motion and ordering the parties to submit supplemental briefing regarding VOTE's standing to bring this lawsuit.[3] The parties each submitted a supplemental memorandum.[4] The parties also submitted responses[5] to each other's memoranda. For the reasons below, the Court now grants VOTE's motion to remand.

### I. BACKGROUND

This case involves the City of New Orleans' (the "City") reallocation of $32 million for the construction of Phase III, an addition to the Orleans Justice Center

---

[1] R. Doc. No. 5.
[2] R. Doc. No. 11.
[3] R. Doc. No. 26.
[4] R. Doc. Nos. 27, 28.
[5] R. Doc. Nos. 29, 30.

("OJC") required to bring the jail into compliance with the consent decree in *Jones v. Gusman*, E.D. La. Case No. 12-859. On September 1, 2023, VOTE filed a lawsuit in Louisiana state court, seeking declaratory and injunctive relief against Mayor Cantrell in her official capacity, based on the City's reallocation of funds from its capital budget.[6] Such funds are to be used to complete Phase III, although VOTE alleges that this reallocation was "in violation of the City's Home Rule Charter."[7] VOTE also moved for the entry of a temporary restraining order ("TRO") and a preliminary injunction. On that same day, the Orleans Civil District Court denied VOTE's request for a TRO and scheduled a hearing for September 5, 2023.[8]

Mayor Cantrell then removed this matter to federal court, asserting that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because VOTE's state court petition "demands the Mayor and/or City Council be enjoined from compliance with the federal mandates of the consent decree."[9] VOTE now moves to remand this case to state court, asserting that this Court lacks subject matter

---

[6] R. Doc. No. 1-2 (VOTE's state-court petition for declaratory and permanent injunctive relief), at 50, ¶¶ 15–16.
[7] *Id.*
[8] *Id.* at 1.
[9] R. Doc. No. 1, ¶ 9.

jurisdiction because this case does not involve a federal question, but "concerns only municipal and state-law claims."[10]

As stated, the Court previously ordered the parties to file supplemental briefing on the issue of standing, explaining that—even if the Court finds it has federal question jurisdiction over the case—it must remand the case to state court if it finds that VOTE lacked Article III standing at the time of removal. The parties timely filed supplemental briefing and responses.[11]

## II. STANDARD OF LAW

### a. Standing

Pursuant to the federal removal statute, a civil action brought in a state court may be removed to the federal district court embracing the place where such action

---

[10] R. Doc. No. 5-1, at 3. The Court notes that VOTE also moved to expedite its motion to remand, R. Doc. No. 6, and the Court denied that motion. R. Doc. No. 15. VOTE then moved for reconsideration of that decision, R. Doc. No. 16, and the Court denied that motion as well. R. Doc. No. 19. In its motion for reconsideration, VOTE stated that it has now learned of additional instances where Mayor Cantrell allegedly "violated municipal and state law to fast-track the construction of Phase III." R. Doc. No. 16-1, at 5. Specifically, VOTE argues that the Sheriff's current conditional use permit does not authorize the construction of Phase III and that the building permits issued by the City of New Orleans were issued ultra vires and were therefore illegal. *Id.* at 5–8. Mayor Cantrell responds that this zoning issue was "specifically addressed by Magistrate Judge North in an October 14, 2022 minute entry," where "the Court directed the city to proceed without regard to the [City Planning Commission]'s and the [City] Council's failure to act on a zoning variance, as the Court perceives those omissions to be primarily political in nature and, in any event, it has never been clear to this Court that a variance or new conditional use permit is required for this project in the first instance." R. Doc. No. 20, at 2 (quoting *Jones v. Gusman*, E.D. La. Case No. 12-859, R. Doc No 1564, at 2–3). Mayor Cantrell also argues that VOTE failed to timely appeal the zoning approval. *Id.* at 2–3. Because the motion pending before the Court is a motion to remand, the Court does not address any of these substantive arguments.
[11] R. Doc. Nos. 27, 28, 29, 30.

3

is pending so long as the federal courts have original jurisdiction over that action. 28 U.S.C. § 1441(a). In a removed case, the defendant, as the party invoking federal jurisdiction, bears the burden of establishing that all elements of jurisdiction—including Article III standing—existed at the time of removal. *Williams v. Parker*, 843 F.3d 617, 621 (5th Cir. 2016) (explaining that "the party invoking federal jurisdiction" bears the burden of establishing standing); *Buras v. Hill*, No. 22-CV-753, 2023 WL 4234393, at *1 (E.D. Tex. June 28, 2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 499 (5th Cir. 2020) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). "The doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Id.* (quoting *Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

To invoke the jurisdiction of the federal courts, "three well-known requirements" must be met. *Id.* "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not conjectural or hypothetical.'" *N.A.A.C.P. v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010) (citing *Defs. of Wildlife*, 504 U.S. at 560–61) (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (citing *Defs. of Wildlife*, 504 U.S.

at 560–51) (cleaned up). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (citing *Defs. of Wildlife*, 504 U.S. at 560–51) (cleaned up).

Because Article III standing is part of the Court's subject matter jurisdiction, if the Court determines that the plaintiff does not have Article III standing to bring this lawsuit in federal court, it must remand the case to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also Buras*, 2023 WL 4234393, at *1–4 (explaining that, once a district court concludes a plaintiff lacks standing in a removed case, "remand is required, not dismissal").

### b. Federal Question Jurisdiction

As discussed, removal is proper only if the federal courts have 'original jurisdiction' over the action. 28 U.S.C. § 1441(a). Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This form of original jurisdiction is known as federal question jurisdiction.

Generally, "questions concerning federal question jurisdiction are resolved by application of the 'well-pleaded complaint' rule." *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152-53 (1908)). That rule "provides that the plaintiff's properly pleaded complaint governs the jurisdictional inquiry." *Id.* at 243–44. "If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking." *Id.*

at 244 (citing *Franchise Tax Bd. of the State of Cali. v. Constr. Laborers Vacation Trust for S. Cali.*, 463 U.S. 1, 10, (1983)).

As explained, the removing party "bears the burden of demonstrating that a federal question exists." *Gulf Coast Plastic Surgery, Inc. v. Standard Ins. Co.*, 562 F. Supp. 2d 760, 764 (E.D. La. June 3, 2008) (Vance, J.) (citing *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848, 852 (5th Cir. 2018) (internal quotation omitted); *see also African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) ("any contested issues of facts and any ambiguities of state law must be resolved in favor of remand" (quotation omitted)).

In *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), "the Supreme Court recognized that 'in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.'" *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022) (quoting *Grable*, 545 U.S. at 312). "The *Grable* doctrine provides that, even when a state court petition pleads only state law causes of action, federal jurisdiction nonetheless exists 'if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Box v. PetroTel, Inc.*, 33 F.4th 195, 201 (5th Cir. 2022) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Some courts have found that *Grable*'s four prongs are satisfied in the context of a third party's challenge to actions taken pursuant to a

federal consent decree. *See, e.g.*, *Police Ass'n of New Orleans v. City of New Orleans*, 572 F. Supp.3d 265 (E.D. La. 2021) (Morgan, J.); *Los Angeles Police Protective League v. City of Los Angeles*, No. 08-00784, 2008 WL 11454760 (C.D. Cal. June 20, 2008), *aff'd* 314 F. App'x 72 (9th Cir. 2009).

### III. ANALYSIS

#### a. Standing

As discussed, for this Court to have jurisdiction over the instant case, Mayor Cantrell must establish that VOTE has Article III standing. To demonstrate VOTE's standing, Mayor Cantrell must first demonstrate that VOTE has suffered an injury in fact. *Defs. of Wildlife*, 504 U.S. at 560. An association or organization can establish injury in fact either through "associational standing" or through "organizational standing." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). For "associational standing" to exist, the association's members must have individual standing and the interests the association seeks to protect must be germane to its purpose. *Id.* Pursuant to the organizational standing theory, an organization can establish standing in its own name if it meets the same standing test that applies to individuals. *Id.*

According to Mayor Cantrell, VOTE has standing based on its allegation that "the City 'has deprived VOTE, its membership, and the general public of their statutorily and constitutionally guaranteed right to participate in any hearing concerning the Capital Budget'" and deprived VOTE of its "right to engage in the

7

democratic process."[12] It therefore appears Mayor Cantrell is arguing that VOTE has both associational standing through its membership and organizational standing in its own name. Mayor Cantrell argues that VOTE has alleged an injury that is "concrete and particularized" as well as "actual" through these allegations.[13]

VOTE's petition states that "VOTE has standing to protect its membership's franchise, to make certain that it is not diluted, diminished or negated in any manner[.]"[14] According to VOTE, "VOTE and its membership have vested economic and political interests in the democratic, public and legislative process that regulates 1) the development of the City's annual Capital and Operating Budget; and 2) OJC's use of its property. VOTE and its members regularly participate in public hearings and comment periods concerning these matters."[15] Further, "[m]any of VOTE's members have been in jail in OJC, are currently in jail at OJC, or have loved ones incarcerated at OJC."[16]

VOTE explains that, "[a]s an organization, VOTE devotes significant economic resources to efforts targeted at reforming the conditions at OJC. These resources include not only money, but also the thousands of hours in time and effort expended by its members to participate and organize around administrative efforts, and local

---

[12] R. Doc. No. 27, at 2 (quoting R. Doc. No. 1-2 (VOTE's state-court memorandum in support of its motion for a temporary restraining order and preliminary injunction), at 10).
[13] *Id.* at 2–3.
[14] R. Doc. No. 1-2, at 49 (VOTE's state-court petition for declaratory and injunctive relief), ¶ 2.
[15] *Id.* ¶ 3.
[16] *Id.* ¶ 7.

legislative efforts that concern the parish jail."[17] VOTE then details several of its previous efforts, including work "to have City Council amend [a land-use] ordinance to reduce the jail's capacity to the current 1,250-bed cap[,]" work on a municipal bail reform ordinance, and contributions to ending a per-diem funding system "that paid [the] Sheriff per incarcerated person per day."[18] Based on this, VOTE states that "[v]iolations of the City Charter budget process directly and adversely impact the social, economic, and political interests of VOTE's members."[19]

In short, both Mayor Cantrell's supplemental briefing and VOTE's petition state that the injury in this case is the deprivation of the right to participate in a hearing concerning the capital budget. Mayor Cantrell attempts to frame this as a deprivation of a constitutional right. According to Mayor Cantrell, "VOTE specifically, concretely, and particularly alleged that the actions of the City deprived VOTE of its constitutionally guaranteed right to participate in a public hearing and engage in the democratic process."[20] Mayor Cantrell does not cite any constitutional provisions guaranteeing this right. VOTE's petition does cite two provisions of the

---

[17] *Id.* ¶ 8.
[18] *Id.* ¶¶ 9–11.
[19] *Id.* ¶ 12.
[20] R. Doc. No. 27, at

9

Louisiana Constitution, but neither guarantees such a right.[21] The only source setting forth a right to participate in this type of hearing is the City's Home Rule Charter, which provides specific procedures that the City must follow when developing or amending its capital budget and also provides that "[a]ny person shall be entitled upon request in writing to the Clerk of Council and subject to such regulation as the Council may have prescribed, to a reasonable hearing on any proposed ordinance." Home Rule Charter of the City of New Orleans, art. III, §§ 3-117, 3-107(6), https://council.nola.gov/laws/.

It is true that certain "harms specified by the Constitution," such as abridgement of free speech, infringement of free exercise, and deprivation of the fundamental right to vote, qualify as "concrete" for purposes of Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2023) (collecting cases); *O'Hair v. White*, 675 F.2d 680, 688 (5th Cir. 1982) (explaining that an injury to the "fundamental right to vote" can qualify as an injury in fact). However, the deprivation of the right to participate in a hearing concerning a city's budget is a different story. That is a procedural injury, analogous to a denial of the ability to participate in a notice-and-comment period for an administrative agency. *See, e.g., Summers v. Earth*

---

[21] R. Doc. No. 1-2, at 10–11. Specifically, VOTE quotes from a provision of the Louisiana Constitution stating that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." *Id.* (quoting La. Const. art. I, § 2). VOTE also quotes from another section of Louisiana's Constitution stating that "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." *Id.* at 11 (quoting La. Const. art. I, §§ 22).

10

*Island Inst.*, 555 U.S. 488, 497 (2009) (explaining that the denial of the ability to file comments on certain Forest Service actions constituted the "deprivation of a procedural right"); *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 447 (5th Cir. 2019) (explaining that "[a] violation of the APA's notice-and-comment requirements is one example of a deprivation of a procedural right").

"[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 497. As the Supreme Court recently emphasized, it has "never held a litigant who asserts [a procedural] right is excused from demonstrating that it has a 'concrete interest that is affected by the deprivation' of the claimed right." *Dep't of Educ. v. Brown*, 600 U.S. 551, 563 (2023) (quoting *Summers*, 555 U.S. at 496–97).

Despite this precedent, Mayor Cantrell argues that the violation of VOTE's procedural right to a hearing *itself* constitutes an injury in fact to VOTE.[22] That is not correct. In fact, another district court in the Fifth Circuit recently rejected a similar Article III standing argument. In that case, the plaintiff had argued that the only injury in fact he had to demonstrate was the deprivation of procedural due process through the City's alleged modification of a preliminary plat for a new development without notice or advertisement and without allowing him the opportunity to be heard. *920 South Beach Blvd., LLC v. City of Bay Saint Louis*, No. 21-cv-263, 2023 WL 274170, at *6 (S.D. Miss. Mar. 31, 2023).

---

[22] R. Doc. No. 27, at 2–3.

The court emphasized that "a plaintiff must allege a deprivation of a procedural right that affects some *concrete* interest." *Id.* (citing *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018)). It also quoted the Supreme Court's recent analysis of two different hypothetical plaintiffs' lawsuits "to show how the concrete harm principle operates in practice":

> Suppose first that a Maine citizen's land is polluted by a nearby factory. She sues the company, alleging that it violated a federal environmental law and damaged her property. Suppose also that a second plaintiff in Hawaii files a federal lawsuit alleging that the same company in Maine violated that same environmental law by polluting land in Maine. The violation did not personally harm the plaintiff in Hawaii.

*920 South Beach Blvd.*, 2023 WL 2749170, at *7 (quoting *TransUnion LLC*, 141 S. Ct. at 22).

Ultimately, the court found that the plaintiff had alleged an injury in fact for purposes of Article III standing because the plaintiff had argued that, "[a]s a result of the City's improper approval of the preliminary plat . . . , the City violated certain ordinances which caused injury to the Plaintiff's own property including the imminent risk of increased water, hazards, and flooding as well as injury to its property value[.]" *Id.* at *7 (cleaned up). Those separate injuries had a "close relationship" to harms traditionally redressed by the courts, and the court therefore found they were concrete and particularized to the plaintiff. *Id.* at *8.

Crucially, VOTE has not alleged that the reallocation of the $32 million in question—which allegedly took place without a hearing—impaired any concrete interest of VOTE or its members separate from the deprivation of the procedural right to participate in a hearing. For example, VOTE has not alleged that, because of the

12

City's actions, VOTE "lost [its] chance to secure a concrete interest" such as a property interest, its members' right to vote, or some other injury with a close relationship to a harm traditionally redressed by the courts. *See TransUnion*, 141 S. Ct. at 2206. That sets this case apart from *920 South Beach*, where the plaintiff alleged that the deprivation of his procedural right to be heard based on the City's modification of the plat without notice or advertisement led to violations of ordinances which caused injury to the plaintiff's property. As in *Defenders of Wildlife*, "[t]his is not a case where plaintiffs are seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs (e.g., the procedural requirement for a hearing prior to denial of their license application, or the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them)." 504 U.S. at 572.

The fact that the City's Home Rule Charter grants this procedural right does not change the analysis. Even where "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," Article III standing still requires a concrete injury beyond the violation of that statute. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Accordingly, the Court is not persuaded that Mayor Cantrell has met her burden of demonstrating that VOTE suffered a concrete injury in fact. Rather, VOTE has suffered "a procedural injury *in vacuo*" and the Court therefore lacks subject matter jurisdiction over the case. *Summers*, 555 U.S. at 497.[23]

---

[23] Because Mayor Cantrell has not shown that VOTE suffered a concrete injury, the Court need not consider whether the injury alleged is particularized, actual or imminent, fairly traceable to Mayor Cantrell, or redressable by this Court.

### b. Federal Question Jurisdiction

Although it appears that VOTE's petition may raise a federal question pursuant to *Grable*,[24] the Court need not analyze this question because it concludes that VOTE lacks Article III standing.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that VOTE's motion to remand is **GRANTED** based on the lack of Article III standing. The case is **REMANDED** to Orleans Parish Civil District Court for further proceedings.

New Orleans, Louisiana, October 23, 2023.

 

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[24] *See, e.g.*, *Police Ass'n of New Orleans v. City of New Orleans*, 572 F. Supp.3d 265 (E.D. La. 2021) (Morgan, J.) (finding *Grable*'s prongs satisfied in the context of a third party's challenge to actions taken pursuant to a federal consent decree); *Los Angeles Police Protective League v. City of Los Angeles*, No. 08-00784, 2008 WL 11454760 (C.D. Cal. June 20, 2008), *aff'd* 314 F. App'x 72 (9th Cir. 2009) (same).